# CARROLL,

## JULY TERM, A. D. 1858.

## Doe *v.* Doe et al.

Where a bill in equity prays for a decree to confirm the title to real estate, of which a defective conveyance was made, the decree will not be granted without proof of an agreement to convey for the consideration stated in the bill, although the answer admits an agreement to convey for a different consideration, valuable in law, and an intention to make a valid conveyance. The bill in such case may be amended, by leave of court at the hearing upon the bill, answer and proofs, by striking out the consideration stated, and substituting that admitted.

To entitle the plaintiff to such decree, where the defect in the conveyance consists in the want of a statute requirement, which renders it wholly void, it must appear, upon the bill and by the proof, that there was an agreement to convey for a valuable consideration.

A purchaser for value, who has the right to call for the legal title, is entitled to such decree against a subsequent purchaser for value, with notice of the prior equitable right.

Possession by the first purchaser, under his defective conveyance, is sufficient to charge the subsequent purchaser with notice, not merely of the conveyance, but of the agreement and consideration on which it was executed.

A conveyance to the subsequent purchaser, upon the condition therein expressed, that it is to be void if he'shall not support the father of the grantor, and as the consideration for which the grantee undertook to pay a stipulated sum, in case he should hold the land under his deed, is not such a purchase for value as will render his want of notice available against the prior equitable title.

A third person, in possession of land, under a conveyance from the first purchaser, with warranty, against whom a suit brought by the subsequent purchaser is pending for possession of the land, and the defence to which is conducted by the first purchaser vouched in as warrantor, is a necessary party to the bill of the first purchaser, praying for a decree to confirm the title, under his conveyance, and for an injunction against the suit.

Doe *v.* Doe.

When the evidence to prove a particular fact necessary to support the case, is held incompetent at the hearing upon the bill, by reason of the non-production of a paper, or want of proof of its loss, the court may, in their discretion, order the cause to stand over, to enable the party to exhibit further interrogatories, for the purpose of making an exhibit of the paper, or accounting for its non-production.

IN CHANCERY. The bill is filed by Joseph B. Doe against Benjamin Doe and Dearborn Doe. The statements and allegations of the bill and answers, and the proofs taken, so far as they are material to an understanding of the questions considered, sufficiently appear in the opinion of the court.

*Dearborn*, for the plaintiff.

*Hall*, for the defendants.

SAWYER, J. This is a bill in equity, in which the plaintiff seeks for a decree to confirm and assure the title to two farms, one in Albany and the other in Tamworth, and for an injunction upon one of the defendants — Dearborn Doe — to restrain him from prosecuting a suit at law, now pending in his favor against a third person, not a party to the bill, for the recovery of the Tamworth farm.

The plaintiff, Joseph B. Doe, is a son of John Doe and Esther Doe; and the defendants, Benjamin Doe and Dearborn Doe, are his brothers. The Tamworth farm was formerly owned by their father, John, and was for a long time occupied by him as his homestead. In 1827, as charged in the bill, and as admitted by the answer of Dearborn, and as appears from the proof, but in 1833, according to the recollection of Benjamin, as stated in his answer, the father deeded this farm to Benjamin. The ground assumed by the plaintiff in the allegation of his bill is, that the conveyance was made by the father to Benjamin upon the condition that the father and mother should be supported and the father's debts paid by him, as

the consideration for the conveyance. This is denied by Benjamin, in his answer; and he alleges that the consideration for the conveyance was his labor for one year upon the farm for the father, after he became of age, and advances and payments of cash made to him on his account. The answer of Dearborn admits that the consideration was substantially as charged by the plaintiff. No evidence is produced by the defendants as to what the agreement was between the father and Benjamin, or what was the consideration for the conveyance. The plaintiff produces the testimony of Henry Nickerson, to the effect that there was an agreement, about twenty-eight years ago, between the father and Benjamin respecting the support by Benjamin of his father and mother, and his "having the place," and there are circumstances tending to corroborate the testimony. The evidence, however, is quite loose and unsatisfactory. The fact itself that the consideration was an agreement, as charged by the plaintiff, is no otherwise material than as furnishing evidence, if made out by the plaintiff, tending to sustain the positions taken by him in reference to the character of subsequent transactions between him and Benjamin, out of which arises the principal controversy in the case. In the farther consideration of the case, the evidence of the plaintiff on this point will be regarded as insufficient to overthrow the answer of Benjamin. The position in which the case stands upon this point will, consequently, be that it does not appear upon what consideration that conveyance was made.

In the spring of 1834, Benjamin executed a deed to the plaintiff, purporting, as it now reads, to convey the Albany and Tamworth farms. It bears date March, 1834; was acknowledged before a magistrate in Frankfort, Maine, where Benjamin then and has ever since resided, but with no certificate of the date of the acknowledgement appended; was attested by the magistrate as the only subscribing witness, and was recorded July 30, 1834. The

consideration expressed in the deed is three hundred dollars.

Upon receiving the deed, in the spring of 1834, the plaintiff went into possession of the Tamworth farm, having the open and visible occupation, and so continued in possession until October, 1838, when he conveyed to one Blaisdell, with warranty, who entered, took possession, built a house, and made other improvements, and kept possession until March, 1841, when he conveyed with warranty to one Bussell, who has ever since remained in possession.

In reference to the deed of March, 1834, from Benjamin to the plaintiff, the ground taken in the bill, is that it was given in pursuance of an agreement between them; assented to by the father and mother, that the plaintiff should have the two farms in consideration of his supporting the parents, and paying certain debts of the father and Benjamin; and that this arrangement was entered into in consequence of the dissatisfaction of the father at the conduct of Benjamin, in leaving him and neglecting to pay his debts, in violation of the alleged agreement, in consideration of which the Tamworth farm was conveyed to him. All the allegations of the bill on this point are denied in the answers of both defendants. They deny that Benjamin ever executed or intended to execute any deed of the Tamworth farm to the plaintiff, or that he ever agreed to make conveyance of it to him upon the consideration charged, or upon any other consideration, or that the father was dissatisfied with the conduct of Benjamin. The answers admit that Benjamin executed a deed of the Albany farm, but not upon the consideration or under the agreement alleged in the bill; and further admit the deed exhibited is the one executed by Benjamin as a conveyance of the Albany farm, but allege that after its execution and acknowledgment, the description of the Tamworth farm was fraudulently inserted. The answers

farther admit that Benjamin intended to make, and supposed until long afterwards that he had made, a valid conveyance of the Albany farm, not knowing or supposing that more than one witness to the deed was required for that purpose. The answer of Benjamin further alleges, that the deed was executed as a conveyance of this farm, at the request of the plaintiff, to enable him to give a title to the whole farm—it being then owned by the plaintiff and Benjamin in common—upon his concluding a negotiation for the sale of it, which was then pending, and under an agreement on his part to account to Benjamin for one half of the amount received from the sale. No evidence is produced by the defendants in support of this allegation in the answer of Benjamin.

Upon the matters at issue in reference to the deed as conveying the Tamworth land, proofs have been taken by both parties.

The allegation of the answers, that the description of this farm has been inserted since the deed passed from the hands of the grantor, to be delivered to the grantee, is supported by the testimony of David Doe. He is a brother of the parties, and, as he states, lived with Benjamin, in Frankfort, at the time he executed the deed. He testifies that he saw Joseph Hobbs, deceased, the person who, from the hand-writing, appears to have drawn up the deed, at his brother's house, in Frankfort, in 1833, and heard a conversation between them relative to a conveyance of the Albany farm, but that nothing was said about the Tamworth farm. He farther testifies that he was present when Benjamin, in 1834, acknowledged the deed; that it was then read in his hearing by the magistrate ; that previously to this he had heard it read by the wife of Benjamin, and, as read by both, it purported to convey only the Albany land ; that after it was acknowledged it was inclosed in a wrapper, without being altered, and left with the magistrate, who was also post-master, to

be forwarded to Ossipee, where said Hobbs and the plaintiff resided. This he states to have been in March or April, 1834.

The plaintiff produces testimony bearing upon the credibility of this statement. Two witnesses testify that in 1847 David made inquiry about the controversy between his brothers, and was told that it was in reference to this deed, and the forgery alleged to have been committed; and that he said he had never seen it, and knew nothing about it. There is no other testimony in support of the answers on this point.

It may not be inappropriate to say, in this connection, that if the fact is, as claimed by the defendants, that the description of the Tamworth farm was interpolated in the deed after the lapse of sufficient time to admit of its being forwarded to Frankfort, executed and returned, whether the interpolation appeared in the same hand-writing as the other part of the deed, or in a different hand, it would be quite probable that the deed itself would now exhibit appearances indicative of the fact. It is a matter of common observation and experience, that writings made by the same hand, at different times, are less likely to present that degree of uniformity and similarity in all particulars, in the appearance of the writing, which may be expected when no interval has occurred in the course of the writing. If such interval of considerable extent has occurred, entire uniformity in every particular throughout the writing, is not to be expected; more especially if, as in this case, it is manifestly the work of one unskilled in the use of the pen. A difference in the style of penmanship, or in the shade of the ink, often more apparent years afterwards, from the unequal fading of the ink, than at first; a heavier or lighter stroke of the pen, or some such indication, will usually be seen, slight it may be in its character, but sufficient to mark the boundary between the two parts of the writing. Upon examining the deed exhibited in this case, the writing

presents all the uniformity, in every particular, to be expected in any case. The most careful examination fails to detect any difference, such as to indicate, without reading the description, where that of the Albany land terminates and that of the Tamworth commences.

The defence, then, upon the evidence in its support as to this point, stands in this position : the answers deny the conveyance, the agreement to convey, and the alleged consideration upon which the conveyance is claimed by the plaintiff to have been made; and they are unsupported in the material matter advanced as the ground of the denial, namely — the interpolation of the description of the Tamworth farm by any appearances exhibited by the deed itself, but are supported by the testimony of David Doe, so far as they may derive support from testimony given under the circumstances, and in relation to the facts which are the subjects of his testimony, and contradicted, as it is, by the proof of his anterior declarations. His testimony was given twenty-three years after the transaction to which it relates. His attention was called to the matter ten years earlier, by the conversation between himself and the two witnesses who have testified to it. His memory, then, would seem, from their testimony, not to have been as distinct on the subject as from his own it would appear to have been ten years later. He appears to have had no personal interest in the transaction of which he testifies, and no reason is suggested why his attention was particularly drawn to the fact that the deed contained only the Albany farm. It must be understood either that the recollection of the fact was revived after that long period of time, by the unaided efforts of his memory, when the statement of Mrs. Hobbs, one of the two witnesses to his contradictory statement, that she knew that the deed contained the description of the Tamworth farm, for the reason that she read it before it was sent to be executed, failed ten years earlier to restore it to his remembrance,

Doe *v.* Doe.

or that his testimony is based upon impressions received by subsequent suggestions from other sources. His testimony must be regarded as contributing but slightly, if at all, to the support of the answers.

To meet the answers on this point, the plaintiff produces the testimony of four witnesses, of whom three read it or heard it read before it was sent to be executed; their attention being called to the fact that it contained a description of the Tamworth farm, by reason of a discussion which arose among them upon the question whether there should be two deeds drawn, one for each farm, or whether both might be embraced in one deed; and of whom two read it or heard it read after it was executed, and before it went into the hands of the plaintiff, or of Joseph Hobbs, deceased. They agree in the fact that it contained a description of the Tamworth as well as the Albany farm, and that the deed exhibited corresponds in all respects with that, and is believed by them to be the same deed.

Testimony is produced by the defendants, affecting the credibility of Joseph Varney, one of these witnesses for the plaintiff. Two witnesses testify that, in separate conversations between them and Varney, subsequent to the time when, according to his testimony, he read the deed, he stated that he knew nothing about it, never read it, and did not know what was in it. This throws doubt upon the reliability of his statement. But, independent of his testimony, this evidence, considered in connection with the early recording of the deed and the uninterrupted possession under it, is clearly sufficient to disprove the statement of the answers, that the defendant, Benjamin, did not execute the deed as a conveyance of the Tamworth farm, however strongly supported it may be considered to be by the testimony of David, and whatever degree of discredit may be considered to be thrown upon Varney by the proof to contradict him.

The fact, then, must be considered as established, that Benjamin executed the deed to the plaintiff in March or April, 1834, as a conveyance of the Tamworth as well as the Albany farm. Under this deed the plaintiff and his grantees have been in the open and visible possession of the farm ever since its delivery.

The deed was inoperative to pass the legal title. Under the statute of June 29, 1829, which was in force at the time of its delivery, no deed or other conveyance in fee is effectual to hold the land conveyed, unless executed in the manner prescribed in the act, signed and sealed by the grantor, attested by two or more witnesses, and acknowledged. A deed under this act, attested by one witness only, is inoperative, even as against the grantor. *Stone* v. *Ashley*, 13 N. H. 38. The want of the statutory attestation is not cured by actual notice of the deed. *Barker* v. *Bean*, 25 N. H. (5 Foster) 412. By the express terms of the act, the attestation by two witnesses is made essential to render the deed " effectual to hold the land." Without such attestation it is equally ineffectual, *ex proprio vigore*, to give an equitable title as to pass the legal. Considered as a conveyance " to hold the land," whether by way of the legal or of an equitable estate, it is utterly void. If, therefore, the title of the plaintiff to the relief which he seeks in the decree of the court, confirming the title of his grantee to the farm, rested solely on the fact that the defendant executed the deed with the intention to convey it, it is obvious that he must fail. To decree that the deed is valid would be in direct contravention of the statute, while a decree that the defendant, Benjamin, should now execute a valid conveyance, would avail nothing as against the intervening rights of others ; and, if it might avail because of no such intervening rights, or because the persons having such rights, being made parties to the bill, their equities are found to be inferior to the plaintiff's, still the mere fact that the defendant

intended and attempted to make a valid conveyance, is no ground, of itself, for such decree against him. Equity will not relieve against defects or mistakes in a voluntary conveyance, or one made without consideration. 2 Vent. 365; Com. Dig., 2, C, 8; 2 T, 9; 4 H, 9; 4 O, 7; Sug. Ven. 464–473; 1 Story's Eq., sec. 105; *Whitten* v. *Russell*, Atk. 448; 1 Mad. Ch. 46. To entitle the plaintiff to relief, he must stand in the position of a purchaser for value. Independent of the answers, the deed itself, expressing a consideration paid, might perhaps be evidence of a purchase for value. But an agreement to convey, and all consideration for a conveyance, are denied by the answers, and this denial being directly responsive to the allegations of the bill, is to stand, unless overthrown by plenary proof.

In reference to the Albany farm, the answers admit that the plaintiff stands in the position of a purchaser for value. An agreement to convey, and upon a valuable consideration, is stated. But the consideration admitted is not that alleged in the bill. This is material to the plaintiff's right. The rules of equity pleading, upon the subject of variance between the case alleged in pleading, and that shown by the proof, closely follow the rules of law upon the same subject. The substance of the case made by the pleadings must be proved. Here the material matter alleged in the bill, and put in issue by the denial of the answers, is not that there was an agreement to convey, and upon a valuable consideration, but that the consideration was such as charged in the bill. A consideration was necessary to be averred, to make out the plaintiff's title to relief. Without it he would not appear to be purchaser for value. This, then, is material to be proved, and it must be proved as laid. It is not enough that the defendant, by his answer, substitutes a different consideration and agreement from that charged. 2 Dan. Ch. 996–1000; Gresl. Eq. Ev. 165–167, (2d Amer. Ed.;) 241–245, (Lond. Ed.) The plaintiff has produced no evidence on

this point as to the consideration alleged in the bill for the conveyance of the Albany farm.

In some cases, where the plaintiff alleges an agreement in his bill different from that admitted by the answer, he is allowed to amend the bill by abandoning the agreement, as charged in the bill, and insisting on that stated in the answer. *Railway Co.* v. *Winter*, Craig. & Phil. 62; *Lyndsay* v. *Lynch*, 1 Sch. & Lefr. 1.

Upon the case presented in the bill, the plaintiff fails to make out title to relief in reference to the Albany farm, because he does not prove that Benjamin agreed to convey that farm upon the consideration stated, viz.: The support of father and mother, and the payment of debts. The answer admits an agreement to convey, upon the consideration that the plaintiff should sell and account for one half of the proceeds. This does not support the case stated. To entitle the plaintiff to the decree as to this farm, the bill should be amended, to conform to the agreement admitted, or evidence adduced to prove the agreement as alleged.

In reference to the Tamworth farm, the plaintiff has produced evidence, which, if it were competent to be considered, would probably be sufficient to control the answers. As it now stands, it is incompetent. This testimony consists of the depositions of Louisa Hobbs, Henry Nickerson, S. D. Hobbs, and Ann D. Fowler, all testifying to the facts that a short time previous to the execution of the deed from Benjamin, he wrote one or more letters to his father, requesting him to make arrangement for the support of himself and wife, with some other person, and agreeing to convey the farm to any person with whom he might make such arrangement; that upon receiving these letters the father made the arrangement with the plaintiff. The witnesses state that they know nothing of Benjamin's agreement except as it appeared from the letters. The production and authentication of the letters, or proof of their

Doe *v.* Doe.

loss, are necessary to render the evidence of their contents admissible. The letters are not exhibited, and their non-production is not accounted for. The plaintiff, therefore, fails to sustain his bill on this point.

It would seem to be not improbable that the evidence as to this farm may be supplied. It is in the power of the court, upon application, to give the plaintiff opportunity to supply it. When, through accident or inadvertence, the plaintiff has failed to prove some particular fact necessary to his case, it is not unusual in practice to permit him to supply the defect by taking further testimony to prove the fact omitted. 2 Dan. Chan. 998. If the plaintiff shall be advised to make the application, and the court shall see cause to grant it, the bill must necessarily stand over, to enable him to exhibit further interrogatories. For this the other party may properly ask that terms should be imposed. The interests of neither party, however, will be promoted by further delay and expense in this long protracted litigation, unless, by anticipating other questions upon which the final decree may depend, it shall be seen that such further delay and expense will probably be followed by some useful result. I shall, therefore, proceed to consider other questions which may arise in this case, assuming that in reference to one or both of the farms the plaintiff will be able to maintain his case upon the points which have already been discussed, by the production of farther evidence, or by an amendment of the bill. ·

The plaintiff, then, is to be considered as having agreed for the purchase of the farms, upon what are to be regarded as valuable considerations, in contradistinction to such as being merely good in law, like blood or natural affection, render the conveyances founded upon them voluntary. In equity, purchasers for value, when they are in a situation to enable them to call for the legal title, are considered to be the owners of the land, whether they hold a conveyance of the legal title or not; and it is, construc-

tively, a fraud upon them to purchase the legal title with notice of such equitable ownership. The party who thus purchases with notice is deemed *particeps criminis* with the fraudulent grantor, and his title at law will be postponed, and made subservient to the equitable rights of the first purchaser. 2 Story's Eq. Ju., sec. 395, and authorities there cited.

Assuming, then, that the plaintiff may be able to establish the fact, by competent evidence, that he agreed with the defendant, Benjamin, for the conveyance of the Tamworth farm for a valuable consideration, which he has executed wholly or in part, and that he is therefore entitled to a decree as against Benjamin, confirming the legal title to that farm in him or his grantee, the farther inquiry arises, whether Dearborn, the other defendant, has equities such as to forbid the decree against him. The allegations of the bill in reference to this defendant are substantially that he and Benjamin combined together to defraud the plaintiff and render him liable on his covenants in the deed to Blaisdell, and that for that purpose Benjamin, in January, 1846, executed to Dearborn a deed of the Tamworth farm, with a condition therein inserted that if Dearborn should support his father and mother during their natural lives, the deed should remain in force, otherwise should become void; that Dearborn did not become bound to fulfill the condition, but that it was inserted in the deed for a mere pretence; that no consideration was paid or secured for the deed, and none pretended to have been given, except a promissory note for $100, to be paid when Dearborn should come into possession of the farm, and a farther writing, lodged with a third person, promising the payment of $50 more, and which was agreed should be delivered to Benjamin only in the event that Dearborn should hold the farm; and that it was agreed between them that both writings should be given up to Dearborn without payment of any part of either of said sums, if he did

not hold the farm by virtue of Benjamin's deed to him, and that when Dearborn took this conveyance from Benjamin, he had knowledge of the agreement between the plaintiff and Benjamin, of the deed given in pursuance of it, and of the execution of it by the plaintiff on his part, in supporting the father and mother, and paying debts, and of the subsequent conveyances to Blaisdell and Bussell, and of the possession under them.

The answer of Dearborn denies that there was any combination or intention to defraud the plaintiff, but admits the taking of the conveyance with the condition as alleged, and that the only consideration therefor, in addition to the obligation to support the father and mother, arising from the condition in the deed, was the promise by him to pay $150 if he held the farm under the conveyance. It admits that Dearborn had knowledge of the deed from Benjamin to the plaintiff, containing a description of the Albany farm, and intended as a conveyance of that farm only; admits that, prior to taking his deed from Benjamin, he had heard of a deed from Benjamin to the plaintiff, of the Tamworth farm ; that he had knowledge of the possession by the plaintiff of that farm — of the support by him of the father and mother from the time of the conveyance to him, in 1834, until 1845 — of the conveyances to Blaisdell and Bussell—of their possession and of the improvements made by Blaisdell ; but denies that he had knowledge of any agreement between Benjamin and the plaintiff for the conveyance of the Tamworth farm, or of any consideration paid or agreed to be paid therefor.

These admissions of Dearborn are clearly sufficient to charge him with notice of the transactions, in respect to the Tamworth farm, between Benjamin and the plaintiff, and thus to render his title, under the deed from Benjamin, subservient to the equitable ownership of the plaintiff. He must be held to have had knowledge of all the facts relating to the title of the party in possession, which he

might have learned upon diligent inquiry. *Patten* v. *Moore*, 32 N. H. 382. The mere fact that a third person is in the open, visible possession, at the time of the conveyance, is sufficient of itself to put the purchaser upon inquiry, and to charge him with notice of all that might have been learned relative to the rights of the party in possession. Here is the additional fact that the grantee had been informed of the prior conveyance under which the possession was taken and held; and although it was defective and void as a conveyance, it was sufficient, when taken in connection with the possession under it, to put him on inquiry as to the agreement which constituted the consideration for it. Upon such inquiry, he must have learned that the agreement was to support the father and mother and pay the debts, and that the party in possession, or his grantor, had entered upon its execution, and was proceeding to the fulfillment of its provisions. He consequently stands in no better position than his grantor, Benjamin.

But upon another ground, even if he should not be held chargeable with notice, his title must yield to the superior equities of the plaintiff. To entitle the defendant, Dearborn, to the preference, even without notice of the plaintiff's prior claim, he must be shown to be a *bonâ fide* purchaser for value. 4 Kent's Com. 179–80. And the purchase money must be actually paid — not merely agreed to be paid or secured. *Patten* v. *Moore, qua supra.*

Thus it is laid down in *Tourville* v. *Nash*, 3 P. Wms. 306, that if the party having a lien in equity gives notice before actual payment of the purchase money, it is sufficient to secure the lien against the subsequent purchase, as the purchaser, upon bringing his bill and showing that he has received notice of the equitable lien, will be protected against a suit upon his bond or other agreement to pay the money. The same doctrine is stated in 2 Mad. Ch. 255, and it is one of the points decided in *Patten* v. *Moore*. To constitute a purchaser for value, whose subse-

quently acquired legal title is to be sustained in prefer-
ence to a prior equitable claim, the consideration for the
purchase must have passed from the purchaser, so that he
cannot be protected against his liability to pay. The
ground upon which equity proceeds, in such case, is that
he who has the better right to call for the legal title, or to
claim its protection, shall prevail ; and he has the better
right who has the earlier claim. *Qui potior est in tempore
potior est in jure.* 1 Story Eq. Ju., sec. 412, *et sequ.* So,
too, the party setting up the prior equitable claim against
the subsequently acquired legal title, must be shown to be
a purchaser for value. But it is not necessary that the
consideration should have passed, as by payment of the
money, to constitute him such purchaser. It is enough
that the consideration is such as to give him an equitable
claim against his vendor. 1 Mad. Ch. 219. While, then,
the plaintiff is to be considered as standing in the posi-
tion of purchaser for value, on the ground of his prior
equitable claim, the question arises whether Dearborn is
shown, upon his admissions on the proofs, to be a purchaser
for value in his subsequently acquired legal title. He ad-
mits that he paid nothing for the deed from Benjamin,
and that the agreement in reference to any consideration
to be paid by him beyond the support of the parents, was
substantially, as charged in the bill, to pay only upon con-
dition that he held the farm under his deed. In refer-
ence to the support by him of the father and mother, his
answer sets forth only that he did in good faith become
bound to perform the condition in the deed, as set forth
therein, and that it was not inserted for a mere pretence ;
and that no greater or other sum has been paid or secured
to be paid by him for the farm, than the $150 specified in
the notes, which were to be given up if he did not hold
under his deed and what appears in the condition of the
deed. The answer does not state that he became bound
by any agreement, promise or obligation, made or entered

into by him as a part of the consideration for the deed to support the father and mother. All that is stated may be true, and still Dearborn not have assumed or undertaken, by any independent agreement or promise to that effect, to support them in any event. The deed is a conveyance, upon a condition subsequent. Dearborn was bound, by the insertion of the condition in the deed, to fulfill it in order to secure and maintain his title under it. The continuance of the title depended upon it. When, therefore, he sets out, in his answer, that the condition was not inserted as a mere pretence, but he was bound in good faith to fulfill it, and at the same time alleges in substance that no other consideration was paid or secured, or agreed to be paid or secured, than the conditional promise to pay the $150, and what appears in the condition of the deed, it cannot be understood that he was bound by any promise or agreement, independent of or disconnected from the condition to support the parents at all events, but only that he was bound to do so in order to maintain his title. This is all that can be supposed to have been meant in the statement that he was bound in good faith to fulfill it. The deed, then, was executed without payment or performance of anything, as a consideration, and without an agreement to pay or perform anything except upon the condition that the deed was valid to give him good title. If he incurred expense in the support of the parents, it was not in pursuance of an agreement binding him to such expense, but voluntary, under the hope that it might enure to his benefit in securing him a title. In respect to all liabilities, incurred or assumed, arising from his contract at the time of the conveyance, and forming the consideration for it, he stands in the position of a subsequent purchaser who is under an agreement to pay, but has not yet paid, and against which liability he may be protected. His subsequent purchase, therefore, must be postponed to the prior claim of the plaintiff, although made without notice of the entire claim.

Doe *v.* Doe.

If, then, the objection to the competency of the evidence, in reference to the Tamworth farm, can be removed, and the want of evidence in reference to the Albany farm can be supplied, or the defect obviated by an amendment of the bill, the plaintiff would seem to have presented a case entitling him to the relief which he seeks.

Another question, however, deserves consideration, which must be disposed of before the final decree, namely: whether the bill now contains all the necessary parties. The general rule is that all persons whose interests are involved in the issue, and whose rights are to be affected by the decree, must be made parties. Story Eq. Pl., secs. 94, 96; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 349. Daniels says it is required, in all cases, that where a party comes to a court of equity for relief, he should bring before the court all such parties as are necessary to enable it to do complete justice, and that he should so far bind the rights of all persons interested in the subject, as to render the performance of the decree perfectly safe to the party who is to perform it, by preventing his being sued or molested again respecting the same matter, either at law or in chancery. 1 Dan. Ch. 241.

The specific relief which the plaintiff seeks is a decree confirming and establishing the title intended to be conveyed to both farms, by the deed from Benjamin, and ordering Dearborn to execute a conveyance of the Tamworth farm to the plaintiff, or to such other person, his heirs and assigns, as may be proper; and enjoining and restraining him perpetually from the prosecution of the suit at law commenced by him against Bussell, for the recovery of that farm. To this relief the plaintiff is entitled, if the objections which now exist are obviated. But it would seem that Bussell — the validity of whose title may depend upon the decrees prayed for, and who is the defendant in the suit at law against the prosecution of which the injunction is sought — has such interest in the subject as to bring him

within the rule. It is clear that he is in a situation to molest again the defendant, respecting the same matter which is here involved, by instituting proceedings in equity against him, to quiet his title.

The plaintiff has been vouched in as warrantor, to defend the suit against him. He may have cause of action at law against the plaintiff, upon his covenants, which equity requires should be barred by the final decree in this suit, but which will not be thus barred unless he is made a party. Upon application to the court, a bill may be amended by the addition of persons as defendants, or by making them co-plaintiffs. Such amendment, after answer, is not a matter of course, but is discretionary with the court. 1 Dan. Ch. 341, 458. New parties may be brought in by a supplemental bill, though the most usual way of adding parties is by amendment. If the plaintiff shall be advised that his case requires Bussell to be made a party, application should be made. to the court for. an order to amend, or for leave to file a supplemental bill for that purpose.